Calvin CLARK, On Behalf of Himself and All Other Persons Similarly Situated, Plaintiff,

v.

EMERSON ELECTRIC MANUFACTURING COMPANY, a corporation existing and doing business in the State of Mississippi, and created under the laws of the State of Mississippi, Defendant.

No. WC 76–10–K.

United States District Court, N. D. Mississippi, W. D.

April 21, 1977.

Alvin O. Chambliss, Jr., Oxford, Miss., for plaintiff.

Thomas M. Hanna, St. Louis, Mo., S. Thomas Rayburn, Oxford, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This cause is before the court on motion of defendant, Emerson Electric Manufacturing Company, to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Plaintiff, Calvin Clark, a 52-year old white male, alleges that he was "constructively" discharged from his employment with Emerson because of his age in violation of the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1988; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.; and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

Plaintiff's claims, other than that asserted under the ADEA, so clearly fail to state a claim upon which relief can be granted as not to warrant discussion.

Emerson's motion to dismiss the ADEA claim is based upon the contention that Clark failed to comply with § 7(d)(1) of the Act, 29 U.S.C. § 626(d)(1), which provides in applicable part that

(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred . . . .

An evidentiary hearing was held on March 16, 1977, to develop the facts relevant to Emerson's motion to dismiss Clark's ADEA claim. From the testimony, stipulations of the parties, exhibits and depositions adduced at the hearing, the court makes the following findings of fact.

Clark received a three-day suspension of his employment with Emerson on July 23 or 24, 1974. On or shortly before that date, Clark wrote the Jackson, Mississippi office of the Wage-Hour Division of the United States Department of Labor complaining of alleged age discrimination against him by Emerson. On July 24, 1974, Clark visited the Oxford, Mississippi office of the North Mississippi Rural Legal Services (NMRLS) to obtain legal assistance in dealing with Emerson's allegedly discriminatory actions against him. There he conferred with staff attorney Stanley L. Taylor, and executed a power of attorney authorizing NMRLS to represent him in this matter. Because Taylor was not proficient in age discrimination law, Clark was informed that Taylor would have to review the applicable law before Taylor could fully advise him. After employing NMRLS to represent him, Clark had no further contact with the Department of Labor.

On July 26, 1974, Clark returned to the Emerson plant and resigned, allegedly because he felt he could no longer endure the discrimination being practiced against him because of his age.

In early August 1974, Clark received a letter dated August 6, 1974, from the Jackson, Mississippi office of the Wage and Hour Division acknowledging "receipt of information" concerning Emerson's practice allegedly violating the ADEA. Enclosed was a Department of Labor pamphlet on the ADEA, and the letter specifically pointed out to Clark that within the pamphlet were "certain requirements with specific time limits governing the circumstances under which an employee may file his own suit under this Act." The letter also advised Clark that "the matter" had been assigned to Compliance Officer Bill Jones and that Jones would contact him.

Subsequently, Clark again met with Stanley Taylor during the month of August and showed him the above-mentioned letter. By this time Taylor had reviewed the ADEA, and he explained to Clark his rights and obligations under the ADEA, including the right to bring his own civil action, and his concomitant obligation to file a notice of intent to sue within 180 days of the discriminatory acts if he should choose to file such a civil action. Taylor further explained that voluntary resolution of Clark's grievance possibly could be achieved through conciliation efforts of the Wage and Hour Division triggered by Clark's informal complaint of age discrimination which had been filed with the Division.

At this juncture Clark was undecided about undertaking to sue Emerson, or even filing a formal notice of intent to sue Emerson, and he did not request Taylor to take any action on his behalf. Clark presumably decided to take a wait-and-see approach pending the action which the Wage and Hour Division had advised him would be forthcoming from Compliance Officer Jones.

Taylor did not hear from Clark until January 23, 1975, at which time Clark stated that he had decided he wanted to take steps to sue Emerson. Even at this point, however, Clark's decision was motivated by the hope that conciliation would be compelled by his action. Taylor was aware that expiration of the 180-day time limit for filing

notice of intent to sue was at hand, and he therefore immediately telephoned notice of Clark's intent to sue to the Jackson office of the Wage and Hour Division, and that same day mailed a written notice of intent to sue to the Jackson office. The written notice was not received in the Jackson office until January 27, 1975.

From the facts as found by the court, it is apparent that no written or oral notice of Clark's intent to sue Emerson under the ADEA was given representatives of the Department of Labor until January 23, 1975. Clark's generalized complaint to the Wage and Hour Division of age discrimination by Emerson "is not the same as filing a notice of intent to bring a civil court action against [Emerson]," *Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1312 (5 Cir. 1976).

The question for the court, then, is whether the notice of Clark's intent to sue Emerson was filed within 180 days of the "alleged unlawful practice." As noted above, Clark's suspension by Emerson occurred, at the latest, on July 24, 1974. In the court's opinion, this is the last act by Emerson which could under any circumstances constitute a practice against Clark unlawful under the ADEA. The 180th day after July 24, 1974, was January 20, 1975. Assuming, however, that Clark's resignation on July 26, 1974, somehow might be construed as an act of age discrimination against Clark by Emerson, the 180th day after that date was January 22, 1975. Further assuming that Taylor's telephonic notice of Clark's intent to sue was properly "filed" under the ADEA, such was not filed until January 23, 1974, and therefore still was not within the 180-day limitation of the Act.

In this Circuit, filing notice of intent to sue under the ADEA within the 180-day limitation of the Act is a jurisdictional prerequisite to suit under the Act. *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5 Cir. 1975); *Powell v. Southwestern Bell Telephone Co.*, 494 F.2d 485 (5 Cir. 1974). Relying on *Dartt v. Shell*

*Oil Co.*, 539 F.2d 1256 (10 Cir. 1976), plaintiff argues that the period of limitation may be tolled by equitable circumstances. The Fifth Circuit, however, has stated that courts "cannot waive [the] limitation period established by Congress," *Hays v. Republic Steel Corp.*, 531 F.2d at 1312. In any event, however, there are no equitable considerations present in the instant case which in this court's opinion would warrant tolling the statutory limitation.

At the time of Clark's suspension, and prior thereto, he suspected that he was being discriminated against by Emerson because of his age. No later than the date of his suspension, Clark wrote the Wage and Hour Division complaining of Emerson's discrimination on the basis of age, and Clark consulted an attorney. Both the Wage and Hour Division and the attorney advised Clark of the necessity of filing a notice of intent to sue within 180 days of the alleged acts of discrimination. On these facts, it cannot be said that equitable consideration should result in tolling. *See Edwards v. Kaiser Aluminum & Chemical Sales, Inc., supra.*

Plaintiff's "continuing violation" argument similarly is inapplicable to the instant case. Clark attempts to justify the late notice by characterizing his "constructive termination" by Emerson as a continuing act of discrimination unlawful under the ADEA. A discriminatory discharge, however, does not constitute a continuing violation of the ADEA absent the repeated refusal of an employer to rehire the discharged employee in accordance with his seniority rights under a collective bargaining contract, *Woodburn v. LTV Aerospace Corp.*, 531 F.2d 750 (5 Cir. 1976). Even where a discharged employee reapplies for employment after his initial discharge, such reapplication is insufficient to convert the initial discharge into a continuing violation, *Brohl v. Singer Co.*, 407 F.Supp. 936 (M.D. Fla.1976).

The court concludes that Clark failed to file timely notice of his intent to sue Emerson under the ADEA, and that Emerson's motion to dismiss therefore must be sustained. An order will be entered accordingly.