Ross CALDWELL, Plaintiff,

v.

NATIONAL ASSOCIATION OF HOME
BUILDERS, Defendant.

No. D 83–74.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 7, 1984.

Charles Asher, South Bend, Ind., for plaintiff.

Gregory L. Kelly, South Bend, Ind., Dudley C. Rochelle, Peter R. Spanos, Atlanta, Ga., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case involves an alleged violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the Act). The defendant, National Association of Home Builders (NAHB) filed a motion for summary judgment on the ground that plaintiff, Ross Caldwell (Caldwell), failed to file a timely charge with the EEOC. Both parties have briefed the issues and oral argument was held on December 3, 1984. For the reasons that follow, defendant's motion for summary judgment will be granted.

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the pleadings and supporting documents, they must be viewed in the light most favorable to the non-moving party.

*Trulson v. Trane Co.,* 738 F.2d 770, 771 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984); *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983).

Plaintiff was employed by the NAHB beginning on June 1, 1972 as an Assistant Director of the Association Services Department at the initial annual salary of $14,000.00. In that position, he was to function as the NAHB resident field representative in Division "F". Throughout his employment with NAHB, the plaintiff served as Regional Representative. NAHB abolished the Regional Representative Program, in which Caldwell was employed in the Fall of 1981, to be effective October 31, 1981. Caldwell was informed of that decision by letter dated September 25, 1981 which also contained information with respect to severance pay that Caldwell would receive.

At the time the Regional Representatives Program was abolished, the Board of Directors of NAHB created the Association Management Services Division (AMSD) which provided some of the services previously provided by the Regional Representative Program. The AMSD consisted of four employees as opposed to twelve positions authorized under the Regional Representatives Program.

After the announcement of the abolition of the Regional Representative Program at the 1981 Fall Board Meeting, several NAHB members and staff persons of local affiliates wrote to David Stahl requesting that plaintiff be retained as an employee of NAHB, either in the position of Regional Representative or in a new position. Plaintiff was temporarily reemployed by NAHB to continue performing his duties as Regional Representative during the time AMSD was being staffed and organized. This temporary employment was effective January 4, 1982, and was originally supposed to last until March 21st. The March 21st date was later extended until July 2, 1982, which allowed plaintiff to obtain additional vested rights in the NAHB Pension Plan. Plaintiff was not informed by NAHB that his continuing performance on a temporary basis of the duties of a Regional Representative was any indication that his position as Regional Representative had not been abolished or that it had been reinstated. Plaintiff believed himself to be a victim of age discrimination by reason of the abolition of the Regional Representative Program in the Fall of 1981.

Staffing of the AMSD was done by James Chiswell, Staff Vice President for the AMSD after he was hired by Executive Vice President David E. Stahl. In addition to the position of Staff Vice President, three positions were open in the newly created AMSD for Assistant Directors. Applicants for these positions were invited from state and local officers of local chapters affiliated with NAHB. Applicants were sought who had a minimum of five years experience as an association manager, preferably in the home building industry, who could excel in all aspects of association management, who were interested in advising and providing educational programs for local and state leadership, and who could be creative innovators with high energy levels, flexible approaches to problem solving, good analytical skills, and capable of helping others do their jobs effectively. The qualifications expected of applicants for AMSD were disseminated at the 1981 Fall Board Meeting, and in a memorandum of Executive Vice President Stahl which Caldwell had seen in October 1981.

Plaintiff applied for all available positions within the AMSD, including not only the positions of Assistant Director but also that of Membership Director after the termination of Kip Orr from that position. His original application letter was written in late September or early October. He met with NAHB Executive Vice President Stahl sometime in the middle of October, and Caldwell was informed he would be considered. When the job of Membership Director in AMSD became open, Caldwell submitted a letter of application to Jim Chiswell for that position. Sometime in March or April, plaintiff met with Jim Chiswell and was told he was being considered

for Membership Director and for positions remaining open within the AMSD.

Plaintiff was not hired into any of these positions within AMSD. Two of those hired as Assistant Directors were Bill Carr and Bob McPeck, both within the protected age group, and both having more years of experience as Regional Representatives with NAHB, and also having direct experience either in association management or in education. The only Assistant Director hired who was outside the protected age group, Cindi Warner, had twelve years experience in association management. James Chiswell, hired as Staff Vice President for AMSD, had several years experience in association management, including being an Executive Office of an NAHB affiliate state organization. James DeLizia, hired as Membership Director, had over ten years experience in association related work, as well as educational background and communication skills superior to Caldwell's. James DeLizia is also outside the protected age group.

Plaintiff was informed by telephone on May 20, 1982, that he had not been selected for the last available position within AMSD. Plaintiff filed a grievance with NAHB on May 24, 1982. Jim Chiswell called plaintiff in response to his grievance and explained that those hired were more qualified than plaintiff. This conversation was followed up with a letter responding to plaintiff's grievance on June 9, 1982. NAHB did not misrepresent or fraudulently conceal from Caldwell the facts necessary to support his charge or induce him to delay filing his charge with the EEOC. Caldwell filed his charge of discrimination with the EEOC on August 9, 1982 and an amended charge on August 20, 1982 alleging that he was discriminated against on the basis of age. Caldwell's charge filed with the EEOC reads as follows:

I worked for the National Association of Home Builders for approximately ten years. I understand it to be a non-profit Illinois corporation headquartered in Washington, D.C. It is an educational and lobbying organization for home builders.

My job was as a regional representative. There were approximately 12 regional representatives in the employ of NAHB for the last several years. By the fall of 1981, almost all of the regional representatives were within the protected age classification of the Age Discrimination in Employment Act. I am 59½ years old. Apparently plans were developed in late 1981 and were implemented in 1982 to do away with the regional representatives and to open a new division entitled Association Management Services Division to carry on the same function as was carried on by the regional representatives. I and the vast majority of the regional representatives were terminated and the persons hired into the Association Management Services Division were, at least for the most part, in their 20's and 30's. All of my evaluations by the NAHB were excellent and I was always told that I was an extremely beneficial asset of the Association. I believe that I have been discriminated against on the basis of my age. I was terminated finally on July 2, 1982.

I applied for the position of director of membership services as well as all positions within the Association Management Services Division. I was not hired in the position of director of membership services or in any position in the Association Management Services Division. I believe that three of the five persons holding the positions for which I applied are under the protected age range of the Age Discrimination in Employment Act. Those three persons under the protected age range of the Age Discrimination in Employment Act were also not previously employees of the National Association of Home Builders.

I believe that I have also been discriminated against in terms and conditions of employment because the pay and benefits extended to me during my employment by the National Association of Home Builders was substantially less advantageous than those extended to per-

sons now acting as director of the membership services and acting as members of the Association Management Services Division.

■ Section 7(d)(1) of the Act, 29 U.S.C. § 626(d)(1), requires that an individual file a charge alleging unlawful discrimination within 180 days after the claimed unlawful practice occurred. The 180 days period is controlling here since Indiana is not a deferral State for purpose of the ADEA. *Keitz v. Lever Bros. Co.,* 563 F.Supp. 230, 234 (N.D.Ind.1983). Although the 180 day limit is not jurisdictional in nature and may be tolled for equitable reasons, failure to file a timely charge bars an action unless the plaintiff satisfies the court that the filing deadline was tolled on equitable grounds. *See Kephart v. Institute of Gas Technology,* 581 F.2d 1287 (7th Cir.1978).

■ The first step in determining the timeliness of a discrimination complaint is to identify precisely the "unlawful employment practice" alleged by the employee. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). In his charge filed with the EEOC and in his deposition, plaintiff maintained that he believed he was a victim of age discrimination at the time he was terminated by the NAHB due to the elimination of the Regional Representatives Program. The Supreme Court in *Delaware State Col-*

*lege v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980), established that a plaintiff complaining of unlawful discrimination in his discharge from employment must file a charge of discrimination within 180 days of the date on which the decision to terminate is made by the employer and communicated to the employee. Construing language in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e), which is identical to the language of Section 7 of the Age Discrimination in Employment Act, requiring that a complaint be filed within 180 days "after the alleged unlawful employment practice occurred," the Court concluded that the relevant date for commencing the 180 day period was the date upon which the decision was made and communicated to Ricks that his tenure was denied, not the date of termination following the one year contract offered him upon denial of tenure. Following *Ricks,* the Supreme Court has also held that the statute of limitations under Title VII begins to run from the date when notice of termination is given, not the date on which the employee is actually terminated. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). The rule of *Ricks* and *Chardon,* that notice rather than actual discharge constitutes the act of discrimination, applies to age discrimination claims. *Heiar v. Crawford County,* 746 F.2d 1190 (7th Cir.1984).[1]

---

1. In his brief and argument, plaintiff argued that his case should be analyzed under *Hishon v. King & Spalding,* —— U.S. ——, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In *Hishon,* the plaintiff alleged that being considered for partner was a term, condition or privilege of employment and as such could not be applied discriminatorily. 104 S.Ct. at 2234. Thus, the unlawful act that would trigger the running of the limitation period was the failure to consider her for partnership. If Caldwell's claim were one for denial of a promotion, absent any prior termination, then his case would in most respects parallel *Hishon.* However, whereas in *Hishon* the employee's termination was a consequence of the decision not to consider her for partnership because she was a woman (and presumably under the rule of *Ricks* and *Chardon* not a subsequent act of discrimination giving Hishon the benefit of a later administrative time limitation for filing), in the present case, as has been consistently alleged by Caldwell beginning with his charge

of discrimination through his complaint the unlawful employment practice began with the termination of the Regional Representative program. In short, Hishon's case is a type of alleged failure to "promote", prior to the termination which was a consequence. In that respect, *Hishon* is exactly parallel to *Ricks. Ricks* concerned the denial of tenure to a college teacher, a circumstance in many ways analogous to the denial of partnership at a law firm. Ricks continued in employment subsequent to his notification that he would be denied tenure, and could have argued, as Caldwell does here, that the failure to reappoint him to a subsequent contract of a temporary nature would constitute an independent violation. However, as the Supreme Court expressly held in *Ricks,* and reaffirmed in *Chardon,* the act which triggers the running of the administrative limitations period is the act which notifies plaintiff that he may be a victim of alleged discrimination. In Hishon's case, this was her denial of partnership; in

■ The decision to terminate plaintiff, along with the other Regional Representatives, was made at the 1981 Fall Board Meeting of NAHB during September, communicated to the plaintiff at that meeting, and restated in a letter from the Executive Vice President of the NAHB to Caldwell on September 25, 1981. Therefore, the time for plaintiff to file his charge of discrimination began to run no later than the latter part of September, at least by the time he received the termination letter dated September 25. However, even if the court would consider the date that plaintiff was terminated and received his severance pay, October 31, 1981, as the latest date upon which the time period for filing began to run, Caldwell's charge, which was filed August 6, 1982 was still untimely.

■ Plaintiff argues in his reply to defendant's motion for summary judgment that his claim accrued on May 20, 1982 when he was informed that he had not been selected for the last remaining position with the AMSD because the NAHB had not followed its terms of employment in repositioning or rehiring plaintiff. Plaintiff did not however state in his charge, or even imply, that he was basing an independent claim of age discrimination on any alleged promises in the NAHB Employee Handbook. It is a well established principle of employment discrimination litigation that claims which are not addressed in the charge of discrimination may not be raised in subsequent litigation, because of the statutory policy expressed in both Title VII and the ADEA that potential defendants must become aware of the charges against them so that good faith negotiation and an appropriate opportunity by the EEOC to conciliate the charge is obtained. *See, e.g., Wippel v. Prudential Insurance Company,* 33 FEP Cases 412, 413 (D.M.D.1982). The courts, including the Seventh Circuit, have held that, in order to be a basis for

subsequent litigation, the plaintiff's charge of discrimination must encompass the claims asserted. *Limongelli v. Postmaster General,* 707 F.2d 368, 373 (9th Cir. 1983); *Carrillo v. Illinois Bell Telephone Company,* 538 F.Supp. 793, 798 (N.D.Ill. 1982) (Title VII demotion and discharge complaint may not include allegations of discrimination on the basis of pregnancy or race, because these alleged practices were not included within the scope of the EEOC charge, citing *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 168 (7th Cir.1976)); *Jackson v. Ohio Bell Telephone Company,* 555 F.Supp. 80, 83 (S.D.Ohio 1982) (discriminatory discharge complaint does not include claim concerning maintenance of discriminatory seniority system); *Miller v. Walker Division of Butler Manufacturing Company, Inc.,* 577 F.Supp. 948, 950–51 (S.D.W.Va.1984) (EEOC charge alleging discriminatory discharge does not include claim for alleged discrimination in salary, promotions, and treatment during employment). Caldwell's claim of age discrimination is based upon his discharge and alleged replacement with younger employees whose pay and benefits exceeded his. It does not exclude a charge of failure to hire as a separate claim of age discrimination so plaintiff's argument that the commencing date should be May 20, 1982 is not supported by law.

■ Further, the plaintiff has not satisfied the court that the filing deadline should be tolled for equitable reasons. In *Wallace J. Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407 (7th Cir.1984), the Seventh Circuit held that the EEOC filing deadline begins to run when facts that would support a charge of discrimination were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated. At 410. It is apparent that Caldwell knew facts that would support a discrimination

Ricks' case, it was his denial of tenure; in Caldwell's case, it was the cancellation of the Regional Representative program. Consistent application of the rule of *Ricks* and *Chardon* shows, therefore, that Hishon's charge was presumably timely because filed within the appro-

priate period after she was notified of her rejection for partnership, but Caldwell's charge was filed in an untimely manner after he received written and verbal notification of the alleged discriminatory act by which he lost his employment.

charge in September 1981 and failed to go to the EEOC until the following August. The hope by an employee that he might be rehired or his fear that the filing of a charge of discrimination might diminish his chances of being rehired will not operate to toll the time limitations under the Act. *Mayor v. Western Electric Co., Inc.,* 487 F.Supp. 84 (W.D.Mo.1980). Nor is an aggrieved employee's fear of retaliation by his employer for asserting an age discrimination claim an excuse for failure to comply with the time requirements of the statute. *Platt v. Burroughs Corp.,* 424 F.Supp. 1329 (E.D.Pa.1976). The pendency of a grievance or pursuit of some other remedy for discrimination also does not toll the time limitations under the statute. *Ricks,* 449 U.S. at 261, 101 S.Ct. at 505. As stated in *Jackson v. Alcan Sheep & Plate,* 462 F.Supp. at 87: "Waiting due to faith in the adequacy of one of two independent remedies is no excuse to justify tolling the statute of limitations of the other." Further, the failure to rehire or a denial of a reapplication for employment as subsequent failure to remedy the act or mitigate its affect are not the unlawful act triggering the administrative limitation period, the termination is and the continuity of employment is insufficient to convert an unlawful act into a continuing violation. *See, e.g., Ricks,* 449 U.S. at 258, 101 S.Ct. at 504; *Jackson v. Alcan Sheep & Plate,* 462 F.Supp. 82 (N.D.N.Y.1978); *Clark v. Emerson Elec. Mfg. Co.,* 430 F.Supp. 216 (N.D. Miss.1977). Finally, consideration of an employee for another job with the employer does not toll the time limitations absent misrepresentations or fraudulent concealment of facts by the employer. *Vaught v. R.R. Donnelly & Sons Co., supra,* at 412.

The facts of this case do not warrant a tolling of the 180 day time limitation imposed on plaintiff to file with the EEOC. The limitation period began running in September 1981 and plaintiff's August 1982 filing was untimely. Accordingly, defendant's motion for summary judgment is hereby GRANTED. SO ORDERED.