Patricia Winn CARTER, for herself and on behalf of all others similarly situated, Maxine H. Jones, for herself and on behalf of all others similarly situated, et al., Plaintiffs-Appellees,

v.

WEST PUBLISHING COMPANY, West Publishing Corporation, et al., Defendants-Appellants.

No. 99-11959.

United States Court of Appeals,

Eleventh Circuit.

Sept. 7, 2000.

Appeal from the United States District Court for the Middle District of Florida. (No. 97-02537-CIV-T-99A-), Richard A. Lazzara, Judge.

Before EDMONDSON, DUBINA and WILSON, Circuit Judges.

DUBINA, Circuit Judge:

Plaintiffs, eight former and current female employees of West Publishing Company ("West"), filed a sex discrimination lawsuit against West on behalf of themselves, and all others similarly situated. Plaintiffs allege that West denied female employees the opportunity to purchase stock and that the few female employees offered stock received fewer shares than similarly-situated males, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.,* and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). The district court certified a class under Federal Rule of Civil Procedure 23(b)(3). Pursuant to Federal Rule of Civil Procedure 23(f) ("Rule 23(f)"), we permitted West to appeal the district court's class certification decision. After a thorough review of the record, we reverse the district court's order.

*I. Background*

West provides legal information services throughout the United States. It operated for nearly 100 years as a privately held corporation until The Thomson Corporation ("Thomson") acquired West on June 20, 1996. Prior to this acquisition, West had an employee stock program which offered some employees an opportunity to purchase West stock. Each year, West would first determine how many shares it could issue based on the company's current performance and capital needs and how many of those issued shares it could

sell to employees. Next, West would offer the opportunity to purchase stock to a few select employees.

Most of the employees selected already owned stock. Nonetheless, each year, approximately ten to twenty employees received the opportunity to become first-time stock purchasers. Generally, a potential new shareholder had to be a member of one of the following three groups: (1) the Management and Executive Group; (2) after 1983, the Key Employees' Incentive Plan ("KEIP"); or (3) the sales force. In addition, one of West's department heads and/or other managers had to recommend the potential new shareholder to West's Chief Executive Officer ("CEO") as an employee who merited an opportunity to purchase stock. Relying on these written recommendations, West's CEO would select first-time stock purchasers based on both objective and subjective factors, such as performance, impact on West's profitability, length of service, loyalty to and support of West's management and its private corporate structure, trustworthiness, and ability to maintain confidentiality. West, however, never adopted or distributed to its employees a written description of the employee stock program and allegedly kept the selection criteria a secret. West also did not publicly disclose which employees it selected and admonished selected employees not to discuss their stock ownership with other employees.

Although the identity of those who owned stock was supposed to remain a secret, most employees knew who did and did not own stock. During the late 1980's, certain men in the sales force boasted that they owned stock, while female employees, with one exception—Margaret Daly—acknowledged that they did not own stock. At a sales meeting in 1996, Margaret Daly asserted that other women on the sales force were jealous of her because she was the only woman who owned stock.

West stopped selling stock to its employees on August 30, 1994, but did not publicly announce that it had discontinued the employee stock program. West continued to pay stock dividends until June 4, 1996. On June 20, 1996, Thomson purchased West for $3.42 billion or $10,455 per share of West stock, a price significantly higher than the price paid by employees to purchase stock from West. At the time of the sale, West had fewer than 200 employee shareholders and twenty-five non-employee shareholders. Of the employee shareholders, 157 were men and 29 were women.

On November 6, 1996, Maxine Jones ("Jones"), a sales representative at West, filed an Equal Employment Opportunity Commission ("EEOC") charge alleging gender discrimination in West's employee stock program. After the EEOC issued a right to sue letter, Jones and another female employee of West, Patricia Carter ("Carter"), filed this lawsuit on October 16, 1997, seeking backpay, compensatory damages, and punitive damages.

After deposing Jones, West filed a motion for summary judgment arguing that Jones's EEOC complaint was untimely, thereby rendering the class action lawsuit time-barred. On April 19, 1999, the district court rejected West's argument and held that Jones's EEOC complaint was timely for two reasons. First, the district court held that even though the discriminatory practice of selling stock ended in August 1994, the payment of stock dividends to employees constituted a continuing violation of Title VII and thus, the statute of limitations did not begin to run until June 1996. Second, the district court found that the doctrine of equitable tolling applied to toll the running of the statue of limitations.

Plaintiffs, in turn, filed a motion for class certification. The district court granted the plaintiffs' motion and certified a class of all females employed by West between January 20, 1996, and June 20, 1996, who, during their employment, either (a) did not receive any shares of West stock and (i) were in the Management and Executive Group; (ii) were KEIP unit awardees; or (iii) were sales representatives; or (b) received some shares of West stock, but fewer shares than were received by similarly-situated males. In so ruling, the district court, relying on its April 19th order, held that the named plaintiffs had standing to bring this class action lawsuit because, *inter alia,* Jones filed a timely complaint. The district court also found that common issues predominated over individual issues and proceeding as a class was superior to individual actions and thus, certified the class under Rule 23(b)(3). In addition to the class certification issues, the district court found that considering the procedural posture of the case, West's employee stock program could violate Title VII because the payment of cash dividends to shareholders may constitute a wage premium. West filed this interlocutory appeal pursuant to Rule 23(f).

*II. Discussion*

On appeal, West argues that the district court erred in certifying the class for three reasons: (1) that the named plaintiffs lack standing to bring this class action lawsuit; (2) that West's employee stock program does not fall within the purview of Title VII; and (3) that individual issues predominate over common issues. In addition to contesting these arguments, plaintiffs argue that Rule 23(f) limits this court's review to class certification issues only. As a result, plaintiffs contend that this court cannot review the first and second issues raised by West. Assuming that we lack jurisdiction to review the second issue, we can review the first issue. As to the merits, we hold that plaintiffs lack standing to bring this class action lawsuit.

A.      Rule 23(f)

The threshold issue raised in this appeal is the scope of this court's appellate jurisdiction under Rule 23(f). Rule 23(f) provides, in pertinent part, that "[a] court of appeals may in its discretion permit appeal from an order of a district court granting or denying class action certification under this rule." Plaintiffs contend that Rule 23(f) limits review to the issue of class certification and does not permit review of the underlying merits of the action. Otherwise, plaintiffs argue that parties dissatisfied with a district court's pretrial rulings could use Rule 23(f) as a vehicle for airing grievances not specifically tied to class certification.

We agree with plaintiffs that Rule 23(f) limits our review to the district court's order granting class certification. *See Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir.2000) ("Rule 23(f) provides for our jurisdiction over interlocutory appeals from a district court's order granting class certification, and we limit our discussion to that issue. We do not address the merits of Plaintiffs' claims."); *cf. Miller v. Mackey Int'l, Inc.,* 452 F.2d 424, 428 (5th Cir.1971) (Wisdom, J.) ("Nothing in [Rule 23] indicates the necessity or the propriety of an inquiry into the merits.").[1] This court, however, still must determine the scope of issues included in the class certification decision. In particular, plaintiffs contend that West's arguments that the named plaintiffs lack standing to bring this class action lawsuit and that West's employee stock program does not fall within the purview of Title VII pertain to the merits of plaintiffs' underlying claim and are entirely

---

[1]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc* ), this court adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

distinct from plaintiffs' class certification claim.

To determine the proper scope, we must examine the requirements of class certification in a Title VII lawsuit. A plaintiff who brings a Title VII action on behalf of a class must satisfy two prerequisites: (1) the named plaintiff must have standing to bring the claim, and (2) the requirements of Rule 23 must be fulfilled. *See Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987). As we have noted:

> any analysis of class certification must begin with the issue of standing and the procedural requirements of Title VII. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.

*Jones v. Firestone Tire & Rubber Co., Inc.,* 977 F.2d 527, 531 (11th Cir.1992) (quoting *Griffin,* 823 F.2d at 1482); *see also Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A July 1981) ("This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Fed.R.Civ.P. 23."); *cf. Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 135 (3d Cir.2000) ("In addition to the requirements expressly enumerated in Rule 23, class actions are also subject to more generally applicable rules such as those governing standing and mootness. For instance, a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class.").

In *Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014 (11th Cir.1996), as part of a 28 U.S.C. § 1292(b) interlocutory appeal from a class certification order, this court reviewed the district court's threshold determination that the named plaintiffs had standing. *See id.* at 1022. In fact, this court referred to the standing question as part of its Rule 23(a) analysis by stating that "appellants challenge the court's approval of the class representatives because of problems with standing, adequacy of representation, and typicality of the named plaintiffs' claims (Rule 23(a) issues)." *Id.* at 1021; *see also Great Rivers Co-op. of S.E. Iowa v. Farmland Indus., Inc.,* 120 F.3d 893, 899 (8th Cir.1997) ("Inherent in Rule 23 is the requirement that the class representatives be members of the class.... Here, [the class representative] is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class."). Therefore,

our binding precedent holds that a determination on standing is a part of the class certification analysis, and thus, subject to review under Rule 23(f). Because we reverse the district court on the standing issue, we need not address whether we have jurisdiction as to West's second argument.

B.      Standing

A plaintiff who seeks to represent a class in a private Title VII suit must have standing to raise the class' claims and must satisfy the procedural requirements of Title VII. *See Griffin,* 823 F.2d at 1482. Title VII requires a plaintiff to file a charge with the EEOC within 180 days of the unlawful discriminatory act. *See* 42 U.S.C. § 2000e-5(e). The time to file an EEOC charge may be extended to no more than 300 days if the aggrieved person first institutes "proceedings with a State or local agency with authority to grant or seek relief from such practice or institute criminal proceedings with respect thereto." *Id.* Pursuant to the "single-filing rule," "[a]s long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members." *Griffin,* 823 F.2d at 1492. This rule encompasses two essential requirements: "First, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective.... Second, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." *Jones,* 977 F.2d at 532 (quoting *Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992, 1011-12 (11th Cir.1982)).

West contends that the named plaintiffs lack standing to assert claims against West, either individually or as class representatives, because they rely on an untimely EEOC charge. Pursuant to the single-filing rule, the named plaintiffs and the class rely on Jones's EEOC complaint. Jones filed the complaint on November 6, 1996, more than 180 days from August 30, 1994, the date on which West stopped offering employees the opportunity to purchase West stock. Even though Jones apparently filed an untimely EEOC charge, the district court ruled that the payment of stock dividends to employees constituted a continuing violation of Title VII, and thus, the statute of limitations did not begin to run until June 1996. Alternatively, the district court held that the doctrine of equitable tolling applied to toll the running of the statute of limitations. On appeal, West argues that the district court clearly erred in holding that both the

continuing violation and equitable tolling doctrines applied. We agree.

### 1. Continuing Violation

"In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does." *Thigpen v. Bibb County, Georgia, Sheriff's Dep't,* 216 F.3d 1314, 1326 (11th Cir.2000) (quoting *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir.1993)). As the Supreme Court explained:

> [t]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful.... The emphasis is not upon the effects of earlier employment decisions; rather, it is upon whether any present *violation* exists.

*Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (internal citations and quotations omitted). Furthermore, "[t]he continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 800 (11th Cir.1988).

Plaintiffs argue that West's employee stock program constituted a present violation because the payment of dividends was a wage premium that enhanced employee compensation. Plaintiffs contend that this wage premium presents a situation more akin to the disparate salary and insurance coverage claims found in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), and *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir.1992), to constitute a present violation, than the claims of a single discriminatory act followed by neutral, nondiscriminatory consequences as found in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); and *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648 (11th Cir.1993).

In *Bazemore,* the North Carolina Agricultural Extension Service had maintained two separate, racially segregated branches and paid black employees less than white employees. *See* 478 U.S. at 394, 106 S.Ct. at 3006. The Extension Service merged the two branches, but some pre-existing salary disparities remained. *See id.* Because these disparities resulted solely from discrimination that occurred prior to Title VII's

effective date, the Extension Service maintained that it should not be required to affirmatively eliminate them. *See id.* at 394-95, 106 S.Ct. at 3006. The Supreme Court rejected this argument, holding that the Extension Service's perpetuation of the salary disparities constituted a continuing violation of Title VII. *See id.* at 395, 106 S.Ct. at 3006. "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." *Id.* at 395-96, 106 S.Ct. at 3006; *see also Calloway,* 986 F.2d at 448 ("Partners discriminated against Calloway not only on the day that it offered her less than her white predecessor, but also on every day of her employment."). Moreover, this court, in *Beavers,* held that a company's policy that denied insurance coverage to children who did not reside with their employee-parent constituted a continuing violation because each week the company denied insurance coverage to divorced men's nonresident children comprised a wrong actionable under Title VII. *See* 975 F.2d at 797-98.

As in *Bazemore* and *Beavers,* plaintiffs assert West continued to violate Title VII by providing different levels of compensation to its employees. In particular, plaintiffs contend that West's payment of dividends pursuant to its allegedly discriminatory stock purchase policy resulted in an on-going practice of providing male employees a wage premium over similarly-situated female employees.

West's payment of dividends, however, differs from the continuing violations in *Bazemore* and *Beavers.* Instead, as in *Ricks,* this case involves the present effects of a one-time violation. In *Ricks,* Ricks, a college professor, alleged that discrimination motivated Delaware State College to deny him tenure. *See* 449 U.S. at 254, 101 S.Ct. at 502. After denying him tenure, Ricks accepted from the college a one-year "terminal" contract with the explicit notice that his employment would end upon its expiration. *See id.* at 253-54, 101 S.Ct. at 501. He claimed that this terminal contract constituted a continuing violation of his civil rights which extended the statute of limitations period until the contract expired. *See id.* at 257, 101 S.Ct. at 503-04. The Supreme Court rejected this argument, stating that the loss of the teaching position was an inevitable effect of the allegedly discriminatory tenure decision and thus did not constitute a continuing violation. *See id.* at 258, 101 S.Ct. at 504; *see also Allen v. United States Steel Corp.,* 665 F.2d 689, 693 (5th

Cir.1982) (rejecting plaintiff's argument that their discriminatory layoffs and recalls are continuing violations of Title VII, because the effects of that discrimination continued through reduced pension and vacation benefits).

Similarly, plaintiffs assert a single discriminatory act—West's discriminatory employee stock program—followed by neutral, nondiscriminatory consequences—payment of dividends. The act of paying male employees a dividend flows from the inevitable consequence of West's allegedly discriminatory practice of offering only men the opportunity to purchase stock. An employee receives dividends only after he receives stock. If an employee does not own stock, then she will not receive dividends. Even though the most painful consequence of the discrimination—the loss of dividends and capital gains from the sale of West—occurred later, the statute of limitations commenced when the last discriminatory act occurred—West's last sale of stock to employees.

The decisions in *Evans* and *Ross* further support this conclusion. In *Evans,* the Supreme Court held that United Air Lines' seniority system which gave present effect to plaintiffs past, illegal forced retirements did not constitute a continuing violation. *See* 431 U.S. at 558, 97 S.Ct. at 1889. The Court reasoned that the seniority system did not discriminate against former female employees or treat former employees discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a non-discriminatory purpose. *See id.* Instead, the Court noted that the system operated in a neutral manner. *See id.* Similarly, in *Ross,* this court rejected the argument that a wage freeze qualified as a continuing violation. *See* 980 F.2d at 660. Even though the wage freeze locked into place the allegedly discriminatory effect yielded by prior applications of a pay and promotion system, the court held that the freeze did not constitute a continuing violation, but was a neutral act, because it locked every employee at the plant, regardless of race, into the then-existing compensation system. *See id.*

As in *Evans* and *Ross,* even though West's distribution of dividends gave present effect to its alleged past discrimination, the payment of dividends did not constitute a continuing violation because it operated in a neutral manner. West distributed dividends to each shareholder, regardless of their gender, based on the

amount of stock owned. This payment of dividends represents just the type of neutral act that *Evans* and *Ross* indicate is not a continuing violation, but a mere continuing effect. Accordingly, we hold that the district court clearly erred in finding that West's payment of dividends constituted a continuing violation of Title VII. *See Calloway,* 986 F.2d at 448 (reviewing a district court's finding of a continuing violation under the clearly erroneous standard).

### 2. Equitable Tolling

Under equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that she was discriminated against. *See Ross,* 980 F.2d at 661 n. 19. A plaintiff who asserts the applicability of equitable tolling bears the burden of proving that it is appropriate. *See id.* at 661. Because the named plaintiffs and the class rely on Jones's EEOC charge, the district court properly examined whether Jones knew or should have known of West's discrimination prior to May 1996. The district court held that plaintiffs met their burden by showing that Jones had a mere suspicion of discrimination, which is not enough to start the running of the statute of limitations. *See Sturniolo v. Sheaffer Eaton, Inc.,* 15 F.3d 1023, 1026 (11th Cir.1994) ("Although the district court noted that Sturniolo 'suspected' age discrimination at the time of his discharge, a discharged employee's mere suspicion of age discrimination, unsupported by personal knowledge of discrimination, will not constitute pretext.").

After a careful review of the record, we hold that the district court clearly erred in applying the doctrine of equitable tolling. *See Ross,* 980 F.2d at 660 (reviewing a district court's finding of equitable tolling under the clearly erroneous standard). The facts demonstrate that Jones knew or should have known that West's employee stock program operated in a discriminatory manner prior to May 1996.[2] Although West attempted to keep secret the identity of those who owned stock, Jones testified that "[t]his may have been a

---

[2]The parties agree that Jones knew of her procedural rights to file an EEOC charge, as demonstrated by her 1986 visit to the EEOC. *See McClinton v. Alabama By-Products Corp.,* 743 F.2d 1483, 1486-87 (11th Cir.1984) (rejecting equitable tolling where a plaintiff was generally aware of his legal right to obtain redress for employment discrimination). In 1986, Jones visited the EEOC for the purpose of filing a charge of sex discrimination in the assignment of sales territories against West, but decided not to file the charge.

secret, but it wasn't a secret" and that "[e]verybody knew." (R4-55-Exh.2 at 123). She further stated that there existed an obvious disparity in treatment within the sales force between the "haves" (shareholders) and the "have nots" (non-shareholders). (*Id.* at 170-71).

As to the gender of the shareholders, Jones testified that she knew that only men owned stock and that qualified women did not own stock. During West's sales meetings in the late 1980's, Jones overheard men on several occasions boast to other employees that they owned stock. (*Id.* at 123-24). She stated that it was obvious that only men on the sales force owned stock, except for one female—Margaret Daly. (*Id.*). In contrast, Jones testified that female employees often asked each other whether any of them owned stock, including those Jones thought deserved to own stock, and all of them said no. (*Id.* at 125). Jones also testified that Margaret Daly claimed "that all the women on the sales force were jealous of her because she was the only one who had stock." (*Id.* at 124). Based on this evidence, we conclude that Jones had more than a mere suspicion of discrimination. She had sufficient evidence to have understood that West operated its employee stock program in a discriminatory manner.

Moreover, the reasons espoused by plaintiffs for waiting to bring an EEOC charge until after Thomson acquired West do not support a finding of equitable tolling. Plaintiffs do not point to any evidence of discrimination discovered after the sale that they needed to recognize that West was discriminating. Instead, they focus on the change of management as removing their fear of retaliation for filing an EEOC charge. Plaintiffs' purported fear of retaliation, however, is not a ground for equitable tolling. *See e.g., Arizmendi v. Lawson,* 914 F.Supp. 1157, 1162 (E.D.Pa.1996); *Caldwell v. National Ass'n of Home Builders,* 598 F.Supp. 371, 377 (N.D.Ind.1984); *Platt v. Burroughs Corp.,* 424 F.Supp. 1329, 1333 (E.D.Pa.1976). Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation. This court cannot permit such circumvention of Title VII's express filing limitations. Furthermore, Title VII specifically protects employees against retaliation for filing a discrimination complaint. *See* 42 U.S.C. § 2000e-3. Therefore, the district court clearly erred in finding the doctrine of equitable tolling applicable to

this case.[3]

*III. Conclusion*

In sum, we hold that Rule 23(f) provides us with jurisdiction to review the district court's holding that plaintiffs have standing, individually and on behalf of the class, to assert a Title VII claim. As to the merits of the standing issue, we hold that the district court clearly erred in finding the doctrines of continuing violation and equitable tolling applicable to this case. The named plaintiffs lack standing to assert claims against West, both individually and as class representatives, because the sole EEOC charge upon which the entire class relies was untimely. Therefore, we reverse the district court's order certifying the class and remand this case for further proceedings consistent with this opinion.[4]

REVERSED AND REMANDED.

---

[3] Because we hold that the named plaintiffs lack standing to bring this class action lawsuit, we need not address whether the district court properly certified the class under Rule 23(b)(3).

[4] Plaintiffs also filed a motion to relinquish or clarify jurisdiction for a particular purpose—to withdraw the class' claims for compensatory and punitive damages. Because we hold that the named plaintiffs lack standing to bring this class action lawsuit, we deny the motion as moot.