**Peners L. GRIFFIN and Henry L. Dejerinett, Plaintiffs-Appellees,**

v.

**Richard L. DUGGER, etc., et al., Defendants-Appellants.**

**No. 85–3831.**

United States Court of Appeals, Eleventh Circuit.

Aug. 7, 1987.

As Amended Sept. 23, 1987.

---

1478

Jim Smith, Atty. Gen., Bruce Alexander Minnick, Asst. Attys. Gen., Mitchell D. Franks, Tallahassee, Fla., for defendants-appellants.

Harry L. Witte, Jerry G. Traynham, Tallahassee, Fla., for plaintiffs-appellees.

Before TJOFLAT and HATCHETT, Circuit Judges, and EATON *, Senior District Judge.

---

* Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

TJOFLAT, Circuit Judge:

## I.

In April 1971, Peners L. Griffin became the first black Road Prison Officer at the Tallahassee Road Prison, operated by the Florida Department of Corrections (FDOC or Department). Beginning in 1973, Griffin frequently sought promotion to higher-grade correctional officer positions, as well as various other positions. On each occasion, the FDOC turned him down.

In December 1974, Griffin's supervisor fired him for disciplinary reasons. The next day, the Regional Superintendent reinstated Griffin because the supervisor had not followed proper termination procedures. In early 1975, the FDOC again terminated Griffin's employment, without notice, for disciplinary reasons. He appealed the termination to the State of Florida Career Service Commission. The Commission found no just cause for Griffin's discharge and ordered the FDOC to reinstate him with back pay. The Florida District Court of Appeal affirmed the Commission's decision, and the FDOC reinstated Griffin to his position.

Soon after his reinstatement, Griffin filed a complaint with the FDOC's Equal Employment Opportunity Program Office, charging that his two dismissals were racially discriminatory. An investigator in that office wrote Griffin a month later and informed him of his conclusion that racial discrimination had not been a factor in the dismissals. Within a day or two of having received that letter, Griffin filed a complaint with the Equal Employment Opportunity Commission (EEOC), detailing the events leading up to his allegedly discriminatory discharges. A notation at the beginning of Griffin's complaint, probably made by an EEOC counselor, describes Griffin's allegations of racial discrimination as also encompassing "[s]incerity of recruiting, hiring, and promoting of minority groups within the Florida's Division of Adult Corrections. Specific attention within the Community Service Program."

Griffin asked the EEOC for a right-to-sue letter and received one in July 1979. On October 15, 1979, Griffin brought this action in the district court against Louis L. Wainwright, as Secretary of the FDOC, the FDOC, and the State of Florida. Griffin alleged that the FDOC had denied him several promotions because of his race. He also alleged that the FDOC impermissibly considered race in all of its promotion decisions, as well as in its hiring and job assignment decisions. In hiring correctional officers, according to Griffin, the Department used written entry-level examinations having a detrimental impact upon blacks.[1]

Griffin sued "individually and on behalf of all others similarly situated," pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, seeking declaratory and injunctive relief and money damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1976) (current version at 42 U.S.C. §§ 2000e to 2000e–17 (1982)), 42 U.S.C. § 1981 (1976),[2] and 42 U.S.C. § 1983 (1976).[3] The class identified

---

1. The district court found the following facts concerning the FDOC's written entry-level examination: "Every person seeking a position as a correctional officer is required to take a written examination. The Department of Administration developed the Correctional Officer I entry level test which consists of seventy-five questions. An applicant must receive a score of at least thirty-eight for employment consideration."

2. **§ 1981. Equal rights under the law**
    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

3. **§ 1983. Civil action for deprivation of rights**
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable

in his complaint was composed "of all past, present and potential black American citizens and residents who have been, are or may be employees of the Defendants or applicants for employment."[4]

On June 17, 1980, Griffin obtained leave of court to amend his complaint to add Henry L. Dejerinett as a party-plaintiff and class representative. Dejerinett, who is black, had applied for an FDOC clerical position but was not hired.[5] On March 10, 1981, based on a stipulation between the parties[6] and without a hearing, the district court preliminarily certified the case as a class action with Griffin and Dejerinett representing the class of "all past, present, and potential black employees of the State of Florida Department of Corrections."

On June 25, 1982, the defendants filed a "Notice Regarding the Adequacy of the Preliminary Class Certified," which called to the court's attention a Supreme Court decision rendered eleven days previously. That decision, *General Tel. Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), announced the appropriate standards courts should apply when determining class action certifications in the context of a Title VII suit, reversing a former Fifth Circuit decision permitting "across-the-board" class actions that had been binding precedent in the new Eleventh Circuit.[7] On July 8, 1982, the defendants moved the court, in light of *Falcon,* to vacate its order certifying the class.

To avoid the risk that the district court might vacate its order certifying the class, Griffin and Dejerinett took steps to obtain an additional named plaintiff to represent those in the class who had applied for the position of correctional officer, failed the written entry-level examination, and not been hired. Accordingly, on July 8, 1982, Alvin Smith, joined by Griffin and Dejerinett, moved the court to intervene as an additional named plaintiff and class representative. In 1980 and 1981, Smith, who is black, applied for the same entry-level position that Griffin held. The FDOC did not hire Smith, because he did not have a high school diploma or a general equivalency diploma (GED), a prerequisite for employment as a correctional officer. Smith later obtained a GED, but when he reapplied with the FDOC in July 1981, he failed the

---

exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Griffin's complaint stated that his action was brought "pursuant to 42 U.S.C. § 1983, to redress the deprivation of the Plaintiff GRIFFIN's property interests in his employment, without due process of law." We assume that Griffin's section 1983 claim also encompassed the theory that the FDOC's conduct amounted to invidious discrimination in violation of the fourteenth amendment's equal protection clause.

4. The claims described in the text were presented in count I of Griffin's complaint, which contained two counts. Count II, which is not pertinent to this appeal, alleged that Griffin was denied due process and equal protection of the law when the FDOC terminated his employment in 1975; Griffin alleged that the FDOC (a) failed to give him notice of the reason for his discharge and an opportunity to be heard before terminating his employment and (b) discharged him because of his race. Count II further alleged that because Chapter 110 of the Florida Statutes, which governs state employment, did not require the Department to give him notice, a hearing, or back pay, Chapter 110 was unconstitutional.

5. Dejerinett subsequently filed a timely charge of racial discrimination against the FDOC with the Florida Commission on Human Relations, a deferral agency for the EEOC. He requested and received a right-to-sue letter from the EEOC in April 1980.

6. The parties stipulated, among other things, that

[t]he allegations of race discrimination in the ... Complaint involve questions of law and fact which, under current law in the United States Court of Appeals, Fifth Circuit, are common to the class, including statistical evidence, evidence concerning the employment system of the State of Florida Department of Corrections, and the common legal principles applied to claims of race discrimination. The parties maintain their right to brief these issues on appeal, if any.

The parties also "reserve[d] the right to move to decertify or limit the class, or to establish subclasses, at any time during the pendency of this litigation."

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

written entry-level correctional officer examination and was again denied the job.[8]

On July 28, 1982, the district court denied the defendants' motion to decertify the class and permitted Smith to intervene[9] because

Smith, [as] an unsuccessful applicant, certainly has an interest in this suit which seeks to challenge defendants' employment practices, including hiring. Unless he is permitted to intervene, his interest may not be adequately represented by the named parties. Mr. Smith eases this court's concern that the class claim against the [FDOC]'s objective criteria was not fairly and adequately protected by the named plaintiffs. Alvin Smith is a proper representative for potential black employees.

As to the defendants' contention that Smith could not be a class representative because he had not timely filed an EEOC complaint, the district court found that the charges of discrimination Griffin had filed with the EEOC included "the hiring claim in addition to promotion, job classification, discipline, and termination claims." The court thus reasoned that the Fifth Circuit's single-filing rule excused Smith from having failed to exhaust his administrative remedies. *See Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir.1968) ("[O]nce an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated. . . .").

On July 30, 1982, the district court entered partial summary judgment for the plaintiffs, including Griffin and Dejerinett, on the liability issue as to the written entry-level examination.[10] The court found that the FDOC examination "has a disparate impact upon class members which has not been justified by business necessity." The plaintiffs had sought summary judgment on two other issues—the class hiring and promotion claims—but the court denied summary judgment on those issues because they presented material issues of fact.

A trial was held over the five-week period beginning August 17 and ending September 17, 1982. The court entered judgment on August 25, 1983, disposing of the following issues in favor of the defendants: whether the FDOC's policies and practices discriminated against past, present, and potential black employees; whether the FDOC's employment practices as to Peners L. Griffin were racially discriminatory; and whether the FDOC's hiring practices as to Henry L. Dejerinett were racially discriminatory. The court entered judgment for the plaintiffs on the liability issue concerning the correctional officer examination, on which it had previously granted summary judgment for the plaintiffs.[11] The issue of relief for the class of black persons who took and failed the correctional officer written examination is still pending. The parties agreed that notice should be given to the affected members of the class and to seek interlocutory appeal of the district court's decision permitting Griffin, Dejerinett, and Smith to serve as named plaintiffs for a class that included applicants with testing claims. We granted this appeal pursuant to 28 U.S.C. § 1292(b) (1982 & Supp. III 1985). Because we conclude that the district court incorrectly applied

---

**8.** Smith never filed a timely charge of racial discrimination with the EEOC.

**9.** In its dispositive order, the district court did not address the intervenor's complaint, which was filed with Griffin, Dejerinett, and Smith's joint motion for leave to allow Smith to intervene. Apparently, the court treated the intervenor's complaint as an amendment to Griffin and Dejerinett's complaint because it ordered that the "action shall continue to be certified as a class with PENERS L. GRIFFIN, HENRY L. DEJERINETT, and ALVIN SMITH as named plaintiffs representing a class of all past, present, and potential black employees of the State of Florida Department of Corrections."

**10.** The district court said it would consider the issue of relief at trial.

**11.** The district court did not render judgment on Griffin's federal due process and equal protection claims or on his pendent state law claim for malicious prosecution (which was first raised in count III of Griffin's first amended complaint). Those claims are still pending in the district court.

the dictates of *Falcon,* we vacate the district court's order certifying the class.

## II.

■ As with any private class action, the legitimacy of a private Title VII suit brought on behalf of a class depends upon the satisfaction of two distinct prerequisites. First, there must be an individual plaintiff with a cognizable claim, that is, an individual who has constitutional standing to raise the claim (or claims) and who has satisfied the procedural requirements of Title VII.[12] Second, the requirements of Rule 23 of the Federal Rules of Civil Procedure must be fulfilled; in other words, the individual plaintiff must be qualified to represent the members of the class in accordance with the four prerequisites of Rule 23(a),[13] and the action must be one of the three types Rule 23(b) identifies.[14] We emphasize that any analysis of class certification must begin with the issue of standing and the procedural requirements of Title VII. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. *See Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A July 1981) ("This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Fed.R.Civ.P. 23."). Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others. *See generally* 2 A. Larson & L. Larson, *Employment Discrimination* §§ 49.50–.51 (1986 & Supp. Nov. 1986).

## A.

■ Under elementary principles of standing, a plaintiff must allege and show that he personally suffered injury. *See Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 898 (5th Cir.) ("To meet the re-

---

**12.** This circuit has held that the conditions precedent to filing a Title VII suit are not jurisdictional, but rather are akin to a statute of limitations. A plaintiff's failure to satisfy the conditions precedent does not, standing alone, deprive federal district courts of subject matter jurisdiction. *Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992 (11th Cir.1982). Nevertheless, "a plaintiff must generally allege in his complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.'" *Id.* at 1010 (quoting Fed.R.Civ.P. 9(c)).

**13.** Rule 23(a) provides as follows:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**14.** Rule 23(b) provides as follows:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

quirement for standing under Article III, a plaintiff must establish either that the asserted injury was in fact the consequence of the defendant's action or that the prospective relief will remove the harm.") (citation omitted), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978); *Thurston v. Dekle,* 531 F.2d 1264, 1269 (5th Cir.1976) ("The threshold case-or-controversy inquiry is whether there existed a named plaintiff with standing to raise the issue before the court."), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). If he cannot show personal injury, then no article III case or controversy exists, and a federal court is powerless to hear his grievance. This individual injury requirement is not met by alleging "that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent." *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975); *see also Minority Police Officers Ass'n v. City of South Bend,* 721 F.2d 197, 202 (7th Cir. 1983) ("Feelings of solidarity do not confer standing to sue."). Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, "even if the persons described in the class definition would have standing themselves to sue." *Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A July 1981); *see also Vuyanich v. Republic Nat'l Bank,* 723 F.2d 1195, 1200 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984). A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Moreover, it is

not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim. This relationship between standing and the class action has been discussed in some detail by the Supreme Court:

> It is not enough that the conduct of which the plaintiff complains will injure *someone.* The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

*Blum v. Yaretsky,* 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982) (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166–67, 92 S.Ct. 1965, 1968–69, 32 L.Ed.2d 627 (1972)).

■ In the case before us, the named plaintiff who initiated the action, Peners L. Griffin,[15] could, and did, allege injury as a result of the FDOC's discipline and promotion practices: he claimed that on specific occasions the FDOC illegally disciplined him and did not promote him, because of his race.[16] Griffin had standing to assert discipline and promotion claims. Because he had already met the educational and testing requirements of a road prison correctional officer and had been hired for that position, however, he suffered no injury as a result of the FDOC's use of the written entry-level examination. *See Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 898 (5th Cir.) ("[Named p]laintiffs

---

**15.** Our analysis of the standing and Rule 23 issues presented by this case focuses first on Peners L. Griffin as a sole named plaintiff. We then examine whether the addition of Henry L. Dejerinett and Alvin Smith as named plaintiffs affected the class certification.

**16.** Griffin satisfied the procedural requirements of Title VII, such as filing an EEOC complaint

against his employer within 180 days of the alleged discrimination, *see* 42 U.S.C. § 2000e–5(e) (1976), and receiving statutory notice of the right to sue his employer, *see* 42 U.S.C. § 2000e–5(f)(1). *See generally* 42 U.S.C. § 2000e–5 (detailing conditions precedent to a Title VII action).

... possessed tenth grade educations and therefore lacked [constitutional] standing" to challenge tenth grade education requirement), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). Griffin thus lacked constitutional standing to assert a testing claim.[17]

■ Accordingly, we hold that the district court erred when it permitted Griffin to raise the testing claim on behalf of himself and on behalf of others. We hold in the alternative that even if Griffin somehow had constitutional standing to assert the testing claim, he did not, in light of *General Tel. Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), have representative capacity to assert the testing claim on behalf of those who took the FDOC's written entry-level examination, failed it, and were not hired.[18] In other words, Griffin did not meet the prerequisites of Rule 23(a). We now turn to a discussion of Rule 23(a) and the Supreme Court's interpretation of it in *Falcon.*

### B.

In 1969, the former Fifth Circuit decided *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir.1969), the first case to sanction a theory that became known as the "across-the-board" approach to Title VII class actions. In that case, a terminated black employee sought to represent a class of black workers and applicants who had hiring, firing, promotion, and working condition claims. The district court restricted the class to include only those black workers who, like the named plaintiff, had been fired. The Fifth Circuit reversed the district court's certification order and announced that broad class treatment was appropriate where the "Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class." *Johnson,* 417 F.2d at 1124 (citation omitted). The court said it "is clear from the pleadings that the scope of appellant's suit is an 'across the board' attack on unequal employment practices alleged to have been committed by the appellee pursuant to its policy of racial discrimination." *Id.*

Under the across-the-board theory, many courts liberally read the requirements of Rule 23(a), permitting named plaintiffs to raise claims on behalf of the class that were of a different type than the named plaintiffs' individual claims. These courts reasoned that the employer allegedly dis-

---

**17.** Griffin's complaint alleged that the FDOC had implemented policies and practices of discrimination, including "maintaining a racially biased working environment" and "failing or refusing to recruit, hire, and assign blacks on the same basis as whites." Nothing in the complaint, in the district court's certification orders, or in the record on appeal alleged or established a causal link between the FDOC's allegedly discriminatory testing policy and its allegedly discriminatory work environment or its allegedly discriminatory promotion and discipline practices. Nor is there an allegation or showing in the record that Griffin (or Dejerinett, who had been denied employment by the FDOC) suffered any specific harm resulting from the allegedly discriminatory work environment. Thus, Griffin (and Dejerinett) did not establish standing to challenge the FDOC's testing practices. *Cf. Gray v. Greyhound Lines,* 545 F.2d 169, 173–75 (D.C. Cir. 1976), *cited with approval in Meritor Savings Bank v. Vinson,* 477 U.S. 57, ——, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

Assuming, for the sake of argument, that Griffin (or Dejerinett) had established standing to assert a testing claim, we nevertheless believe that under *General Tel. Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the court should not have presumptively held that Griffin satisfied the requirements of Rule 23(a) so as to allow him to represent a class of applicants with testing claims. Griffin's complaint provided "an insufficient basis for concluding that the adjudication of his claim of [a racially discriminatory environment] would require the decision of any common question concerning the failure of [the FDOC] to hire more [black correctional officers]." *See Falcon,* 457 U.S. at 158, 102 S.Ct. at 2371. The record does not identify any questions of law or fact that were common to Griffin's claim of a racially biased working environment and the claims of those who failed the written entry-level correctional officer examination and were not hired. Thus, even if Griffin had standing to litigate his right to a work environment untainted by racial discrimination, he could not, on that basis, represent those with testing claims, because he did not satisfy the requirements of Rule 23(a).

**18.** In *Falcon,* the Supreme Court granted certiorari for the express purpose of discussing the contours of Rule 23(a). *Falcon,* 457 U.S. at 155, 102 S.Ct. at 2369. The Court did not question, in its opinion, whether the named plaintiff had constitutional standing.

criminated on the basis of a class characteristic, such as race, and that the discrimination allegedly pervaded, in an across-the-board fashion, all of the employer's personnel policies and practices. *See, e.g., Gibson v. Local 40, Int'l Longshoremen's & Warehousemen's Union*, 543 F.2d 1259 (9th Cir. 1976); *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir.1975); *Barnett v. W.T. Grant Co.*, 518 F.2d 543 (4th Cir.1975); *Reed v. Arlington Hotel Co.*, 476 F.2d 721 (8th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).[19]

The Supreme Court repudiated that liberal reading of the class action, and the reasoning underlying it, in *General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).[20] In allegations quite similar to those made in Griffin's initial complaint, the named plaintiff in *Falcon* claimed that his employer had denied him promotions because he was a Mexican-American. He also alleged class claims on behalf of all Mexican-American employees of the company who had not been promoted, and all Mexican-American applicants who had not been hired. Without holding

an evidentiary hearing, the district court certified a class consisting of those employees and applicants at one of the company's facilities. After a trial, the district court found that the employer had not discriminated against the named plaintiff in hiring, but did discriminate against him in its promotion practices. As to the class claims, the court reached the converse conclusion, finding no discrimination in promotion practices, but finding the hiring practices unlawfully discriminatory. On appeal, the Fifth Circuit, using the across-the-board approach, upheld the class certification:

> [The across-the-board rule] permits an employee complaining of one employment practice to represent another complaining of another practice, if the plaintiff and the members of the class suffer from essentially the same injury. In this case, all of the claims are based on discrimination because of national origin.

*Falcon v. General Tel. Co.*, 626 F.2d 369, 375 (5th Cir.1980).

The Supreme Court, on certiorari, began its analysis of the case by reiterating that Title VII does not relieve a private party plaintiff seeking to represent others from meeting the requirements of the class ac-

---

**19.** Although widely accepted, the across-the-board theory was not universally endorsed. *See, e.g., Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270–71 (10th Cir.1975); *Kinsey v. Legg, Mason & Co.*, 60 F.R.D. 91 (D.D.C.1973), *rev'd on other grounds sub nom, Kinsey v. First Regional Sec., Inc.*, 557 F.2d 830 (D.C.Cir. 1977); *White v. Gates Rubber Co.*, 53 F.R.D. 412 (D.Colo.1971); *Gresham v. Ford Motor Co.*, 53 F.R.D. 105 (N.D. Ga.1970); *Hyatt v. United Aircraft Corp.*, 50 F.R.D. 242 (D.Conn.1970). Moreover, one of the members of the Fifth Circuit panel that first announced the across-the-board approach, Judge Godbold, cautioned in a specially concurring opinion that the approach announced in the majority's opinion was not a replacement for precise pleadings that allow district courts to determine whether the requirements of Rule 23(a) have been satisfied. *See Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125–27 (5th Cir.1969) (Godbold, J., specially concurring). Judge Godbold also observed that "an over-broad framing of the class" may be unfair and harmful to the absent class members: "what of the catastrophic consequences if the plaintiff loses and carries the [over-broad] class down with him, or proves only such limited facts that no practice or policy can be found, leaving him afloat but sinking the class?" *Id.* at 1126. Thirteen years later, the Supreme Court favorably discussed Judge Godbold's opinion when it rejected the across- the-board approach. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 160–61, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

**20.** Even before *Falcon*, the across-the-board approach was placed in doubt by the Supreme Court. In *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405–06, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977), the Court reversed a broad class certification:

> We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed. Rule Civ.Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.

tion rule [21]: "An individual litigant seeking to maintain a class action under Title VII must meet 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation' specified in Rule 23(a). These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982) (citations omitted). Although the Court recognized "that racial discrimination is by definition class discrimination," it said that the mere allegation of racial discrimination cannot answer the questions posed by Rule 23(a) or define the class that may be certified:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Falcon*, 457 U.S. at 157, 102 S.Ct. at 2370 (footnote omitted). Thus, evidence that an employee was denied a promotion because of illegal considerations of race will not necessarily justify the additional inference, for example, that the employer has adopted a general policy of racial discrimination that is reflected in the employer's other employment practices, such as hiring and testing. *See Falcon*, 457 U.S. at 158, 102 S.Ct. at 2371. The presumption that general class claims are fairly encompassed within the personal claims of a named plaintiff can, at best, be characterized as tenuous. *Id.* The *Falcon* Court held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160, 102 S.Ct. at 2372. This means that a private Title VII class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372.

The district court's error in *Falcon* can be traced to the named plaintiff's complaint, which "provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of petitioner to hire more Mexican-Americans." *Id.* at 158, 102 S.Ct. at 2371. Without the benefit of sufficiently specific pleadings or of a hearing that probed beyond the pleadings to answer the required certification questions, *see id.* at 160, 102 S.Ct. at 2372, the district court could do nothing but presume that the named plaintiff's individual promotion claim was typical of other claims that Mexican-American employees and applicants might raise. *Id.* at 158–59, 102 S.Ct. at 2371. In short, a district court must have some way of identifying the questions of law or fact that are common to claims of the named plaintiff and of the class members he seeks to represent. *Id.*

The Supreme Court has thus repudiated the across-the-board theory of Title VII class actions.[22] No longer will one allegation of specific discriminatory treatment be sufficient to sustain a companywide class action.[23] No longer will an employee complaining of racial discrimination, for example, in one employment practice

---

**21.** In contrast, under Title VII, the EEOC may seek relief for groups of employees or applicants without having to comply with the requirements of Rule 23. *General Tel. Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

**22.** "Although *Falcon* does not eliminate broad-based class actions *per se*, it will be a rare situation indeed that will permit the combining of hiring, promotion, and discharge claims in the same class." 2 A. Larson & L. Larson, *Employment Discrimination* § 49.52(c)(2) (1986).

**23.** In *Falcon*, 457 U.S. at 159, 102 S.Ct. 2371 (footnote omitted), the Court stated as follows: "If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation."

necessarily be permitted to represent other employees complaining of racial discrimination in other practices. District courts must not presume that a named plaintiff has satisfied the typicality and commonality requirements of Rule 23(a). In practical terms, this means that, as a general rule, incumbent employees cannot represent a class that includes applicants and that even a general policy of discrimination will not justify a class of both applicants and employees. *See Falcon*, 457 U.S. at 158–59 & n. 15, 102 S.Ct. at 2371 & n. 15.

■ In footnote fifteen of *Falcon*, the Supreme Court identified exceptions to that general rule. For example, an employee who alleges that he was a victim of a specific discriminatory employment practice may properly represent applicants when the employer used a biased testing procedure to evaluate both applicants and incumbent employees: "a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a)." *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15. In addition, a general policy of discrimination could justify a class of both applicants and employees "if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Id.*

The situations the Supreme Court identified in footnote fifteen can be thought of as exceptions to the general rule that applicants and incumbent employees cannot share the same class. We emphasize, however, that those situations are exceptions not because racial discrimination is by definition class discrimination, a necessarily valid proposition underlying the across-the-board rule, *Falcon*, 457 U.S. at 157, 102 S.Ct. at 2370, but because the commonality and typicality requirements of Rule 23(a) can be satisfied.[24] If, after a rigorous analysis, a district court is satisfied that in a case similar to those situations described in footnote fifteen the Rule 23(a) requirements have been met, then it should not hesitate to certify the class. We caution, however, that although district courts should give real meaning to *Falcon*'s footnote fifteen, that footnote should not be used to defeat the general dictates of *Falcon*. The footnote was not meant to sanction broad class actions that otherwise do not conform to Rule 23(a).

## C.

We begin our analysis of whether the requirements of Rule 23(a) have been fulfilled in the case before us by examining Griffin's complaint.[25] The complaint, which was filed in October 1979, almost three years before *Falcon* was decided, included allegations that the defendants discriminated on the basis of race with their written entry-level examinations and in their hiring, assignment, discipline, and promotion decisions. Griffin's action was brought "on behalf of all past, present and potential black American citizens and residents who have been, are or may be employees of the Defendants or applicants for employment." As to Rule 23(a)'s numerosity requirement, the complaint contains the allegation that the persons in the class "are too numerous to join in this action."[26] The

---

**24.** *See* 1 H. Newberg, *Newberg on Class Actions* § 3.17 (2d ed. 1985):

In the final analysis, through its rulings and examples, *Falcon* instructs that the Rule 23(a) typicality requirement can be satisfied only by a showing of a sufficient interrelationship between the claims of the representative and those of the class, so that an adjudication of the individual claims will necessarily involve the decision of common questions affecting the class.

**25.** Our analysis takes into account that the district court had considerable discretion in deciding to certify the class. *See, e.g., Walker v. Jim*

*Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir.1984); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir.1983).

**26.** In his second amended complaint, Griffin made the following numerosity allegation:

The precise total number of persons in the class is unknown to the Plaintiffs. Plaintiffs allege, on information and belief, that there are more than 1,000 persons in this class. There are many other unknown class members. They are too numerous to join as named Plaintiffs and such joinder is impractical.

only reference to Griffin's ability to represent that class was this statement: "The Plaintiff can fairly and adequately represent the class." The complaint's only reference to Rule 23(a)'s commonality requirement was this statement: "The conclusory questions of whether there is a general pattern and practice of discrimination by Defendants and the question of whether certain practices constitute illegal job discrimination are common mixed questions of fact and law to the class as a whole." The complaint made no allegation whatsoever that Griffin could meet Rule 23(a)'s additional requirement of typicality.[27]

Without an evidentiary hearing, the district court preliminarily certified the "class of all past, present, and potential black employees" of the FDOC, finding that the requirements of Rule 23(a) had been met. The court's certification ruling was based solely on a stipulation of the parties that under the law of the Fifth Circuit, the named plaintiffs met the commonality requirement of Rule 23(a).[28] The parties further stipulated that "[t]he claims of the named plaintiffs are, under current law in the United States Court of Appeals, Fifth Circuit, similar to those of other members of the proposed class."[29] The parties made no relevant factual stipulations.

Soon after the Supreme Court decided *Falcon,* the defendants moved the district court to vacate the order certifying the class. The parties filed memoranda of law, arguing the applicability of *Falcon.* On the basis of the memoranda, and with no hearing, the district court issued an order denying the defendants' motion. The court's analysis began with the recognition that "[t]he *Falcon* decision mandates that this court carefully examine the requirements of Rule 23(a)."[30] As to the common-

ality requirement, the district court found the following:

> Plaintiffs have alleged a common practice and pattern of racial discrimination which affects defendants' hiring, promotion, job classification, disciplinary, and termination decisions. This general discriminatory policy commonly injures all members of the class of past, present, and potential black employees of the Department. Plaintiffs maintain that they will utilize similar statistical data, similar historical background, and the same or similar witnesses to support their allegations of class-wide discrimination. This court is satisfied that the commonality requirement of Rule 23 is met.

The district court found the typicality prerequisite satisfied, but only because Henry L. Dejerinett, a black male who was not hired for a clerical position, had been added as a party-plaintiff and as a class representative. Even so, the court was concerned that Griffin and Dejerinett could not adequately represent those with objective testing claims:

> Plaintiff Griffin certainly can adequately protect the interests of black employees who have claims of discrimination in promotions, job classification, discipline, and terminations. Plaintiff Dejerinett's claim is somewhat interrelated with the class claims of a discriminatory hiring policy. Plaintiffs allege that blacks are not hired in sufficient number because of facially neutral objective criteria, i.e., a high school education requirement and the [FDOC] test, which have a disparate impact on black applicants and of a subjective barrier which causes the almost exclusively white decisionmakers to discriminate against black applicants. The class claim against discriminatory subjec-

27. The first reference to Rule 23(a)'s typicality requirement was in Griffin's second amended complaint, in which he alleged that "the claims of the Plaintiffs are typical of the claims of all other class members."

28. *See supra* note 6.

29. The defendants reserved the right to move the district court to decertify the class. *See supra* note 6.

30. As to the first requirement of Rule 23(a)— "the class is so numerous that joinder of all members is impracticable"—the district court found that "[t]he number of black persons employed by the [FDOC] in February 1981 was 1,346.... This number alone, without inquiry as to the number of past and potential black employees, clearly indicates that the class members are too numerous to join."

tive hiring decisions is fairly encompassed in Dejerinett's claim. This court, however, is concerned that the class claim against the Department's objective screening criteria which have a disparate impact upon class members, especially the [FDOC] test, is not fairly and adequately protected by any of the named plaintiffs.

In that same order, the district court permitted Alvin Smith to intervene as a party plaintiff. Smith was an unsuccessful black applicant for a correctional officer position who had failed the written entry-level correctional officer examination. The court wrote the following in its order: "Mr. Smith eases this court's concern that the class claim against the Department's objective criteria was not fairly and adequately protected by the named plaintiffs. Alvin Smith is a proper representative for potential black employees."

As to Griffin's capacity to represent the "class of all past, present, and potential black employees" of the FDOC, we hold that, in light of *Falcon*, Griffin's complaint provided an insufficient basis by which the district court could have concluded that Griffin's "claim[s] of discrimination in promotion [and discipline] would require the decision of any common question concerning the failure of [the defendants] to hire more [blacks]." *Falcon*, 457 U.S. at 158, 102 S.Ct. at 2371. In our view, Griffin satisfied neither the commonality nor the typicality requirements of Rule 23(a).[31]

The district court found the commonality requirement satisfied because the "general discriminatory policy" Griffin alleged "commonly injures all members of the class" and that in order "to support their allegations of class-wide discrimination," Griffin would utilize "similar statistical data, similar historical background, and the same or similar witnesses." As to the typicality requirement, the district court found it satisfied because "[p]laintiffs allege that

blacks are not hired in sufficient number because of facially neutral objective criteria, i.e., a high school education requirement and the [FDOC] test, which have a disparate impact on black applicants and of a subjective barrier which causes the almost exclusively white decisionmakers to discriminate against black applicants."

To us, the district court failed to appreciate the significance of *Falcon*. The district court did not engage in the kind of "rigorous analysis" that we believe the *Falcon* court contemplated. *See Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372.

Griffin's initial complaint, relying on the then-valid across-the-board rule, made no factual showing to satisfy the Rule 23(a) requirements. Additionally, the two amended complaints, which included Dejerinett and Smith as named plaintiffs, offered no facts to satisfy the Rule 23(a) requirements. Moreover, the named plaintiffs' "Memorandum in Opposition to Motion to Vacate Order Certifying Class" offered little more than conclusory statements that the named plaintiffs satisfied the Rule 23(a) criteria. *See Nelson v. United States Steel Corp.*, 709 F.2d 675, 680 (11th Cir. 1983) ("[Named plaintiff] was ... obligated to show, in at least a preliminary fashion, the required commonality between her claims and those of the putative class.") (citations omitted). Although the plaintiffs asserted that "[w]hether a person impacted by one employment practice may represent other persons impacted 'in the same manner' by another practice need not be reached in this case," they nonetheless tried to take refuge in *Falcon*'s footnote fifteen, which states that a class of both applicants and employees could be justified "if the discrimination manifested itself in hiring and promotion practices in the same general fashion." *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15. This is the closest the named plaintiffs came to helping the district court conduct a rigorous

---

**31.** As the Supreme Court noted in *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13,

[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Rule 23 inquiry. In fact, the plaintiffs, although aware of *Falcon*, continued to rely on the defunct across-the-board rule by citing a former Fifth Circuit case [32] that, in light of *Falcon*, was no longer good law.

The district court's commonality analysis amounts to nothing more than a presumption that racial discrimination as manifested in various employment practices raises a common question of law or fact. *See Wheeler v. City of Columbus*, 703 F.2d 853, 855 (5th Cir.1983) (per curiam) ("Discrimination in its broadest sense is the only question alleged that is common to [the named plaintiff] and the class she sought to create and represent. Under *Falcon* this is not enough."). The district court's typicality analysis, which presumably is based on *Falcon*'s footnote fifteen, is flawed. As we have already discussed, in that footnote the *Falcon* Court identified exceptions to the general rule that employees cannot represent a class that includes applicants, even though the employer's discrimination is manifested in various employment practices. One situation that may justify a class of both applicants and employees is when the discrimination that is manifested in various practices is effected "in the same general fashion, such as through entirely subjective decisionmaking processes." *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15. The named plaintiffs' assertions notwithstanding, the pleadings demonstrated that any general policy of discrimination that the FDOC may have had did not manifest itself in the same general fashion.

When the Supreme Court used the term "same general fashion," it gave an example: "entirely subjective decisionmaking processes." Significant proof that an employer makes both discriminatory hiring and promotion decisions using an entirely subjective decisionmaking process for each employment practice is a manifestation of a general policy of discrimination operating in "the same general fashion." By qualifying "subjective decisionmaking processes" with "entirely," the Court implied that an employer's general policy of discrimination manifested, for example, by an objective hiring practice and by a subjective promotion practice would not be discrimination operating in "the same general fashion" sufficient to justify a class of both applicants and employees.

The FDOC's decisionmaking process for hiring correctional officers is objective: applicants must hold a high school diploma or a general equivalency diploma and must pass the written correctional officer examination. In contrast, the FDOC's decisionmaking process for promoting correctional officers, and other employees, is subjective: applicants for promotion need not hold advanced degrees or pass any additional examinations; correctional officers are promoted on the basis of their performance as viewed by their superiors. The case before us is not one that implicates *Falcon*'s footnote fifteen.

We therefore hold that Griffin, an incumbent correctional officer complaining of a subjective decisionmaking process, could not represent a class that included those who may have been victims of a discrimina-

---

**32.** In support of its typicality argument, the plaintiffs' memorandum of law cited *Hebert v. Monsanto Co.*, 576 F.2d 77, 88 (5th Cir.), *vacated and dismissed for want of jurisdiction*, 580 F.2d 178 (5th Cir.1978) (per curiam):

Appellee contends that because appellant's claim concerns only the trucking activities of the company and other claimants are from different departments, appellant's claim is neither factually nor legally typical. We recognize, however, that the typicality requirement is not so rigid as to comprehend only similar fact situations. If class actions were limited to factual typicality, class actions under Title VII would be impossible because, except in rare cases, the facts would not be identical. It would be a better test for typicality to consider whether the types of facts or evidence were typical of the class. For example, if all claims, although of different job classifications, depended upon statistical evidence, and the statistics evidenced a policy of discrimination, typicality would be satisfied.

In light of *Falcon*, "general statistical evidence of underrepresentation in the workforce will undoubtedly not suffice to justify a single class covering different types of discrimination such as in hiring, promotion, and discharge." 2 A. Larson & L. Larson, *Employment Discrimination* § 49.52(c)(2) (1986) (interpreting footnote 15 of *Falcon*, 457 U.S. at 159, 102 S.Ct. at 2371).

tory objective decisionmaking process, such as applicants for the position of correctional officer who took the written entry-level examination and failed it. *See, e.g., Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1365 (11th Cir.1984) ("Following *Falcon* ... we hold that [plaintiffs'] complaint provided an insufficient basis for concluding that the adjudication of [their] claim of discrimination in *hiring* supervisory employees would require the resolution of common questions of law and fact concerning [the employer's] discriminatory practices in *recruitment, job assignment, transfer,* and *promotion.*"); *Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d 1381, 1387 (5th Cir.1983) ("Under *Falcon,* plaintiff cannot serve as class representative with respect to hiring, promotion, or any other employment practices excepting discriminatory discharge because she does not possess the same interest and did not suffer the same injury as the other members of the class."); *Taylor v. Block,* 35 Fed.R. Serv.2d (Callaghan) 546 (D.D.C. Oct. 15, 1982) (plaintiffs who alleged they suffered only promotion discrimination could not represent across-the-board class claiming hiring, assignment, and training discrimination). In other words, Griffin, who could assert discipline and promotion claims under Title VII, did not have representative capacity, within the meaning of Rule 23(a), to assert testing claims on behalf of others.[33] We now examine whether the addition of Henry L. Dejerinett and Alvin Smith as named plaintiffs affected the class certification question.

### III.

#### A.

Eight months after filing his complaint in district court, Griffin sought leave to amend his complaint to add Henry L. Dejerinett as a party-plaintiff and as a class representative. In November 1978, Dejerinett applied for an FDOC clerical position, entitled "Property Manager III." Dejerinett was not required, as part of the application process, to produce an educational degree or to take the written entry-level examination required of correctional officer applicants. He was required, however, to have an interview. Dejerinett was not hired; instead, the FDOC hired a white male. A month later, Dejerinett filed a charge of racial discrimination against the FDOC with the Florida Commission on Human Relations, a deferral agency for the EEOC. He requested and received a right-to-sue letter from the EEOC in April 1980. The district court, with no written analysis of standing or Rule 23, granted Griffin leave to amend his complaint and add Dejerinett as a named plaintiff.

■ Dejerinett had standing to assert a subjective hiring claim.[34] He applied for a clerical position, requiring no correctional officer examination or educational degrees, and was not hired. Because Dejerinett never took the correctional officer examination, and never applied for that position, he suffered no injury as a result of that test. He thus lacked constitutional standing to assert a testing or a hiring claim arising out of the FDOC's correctional officer application process.

■ Accordingly, we hold that the district court erred when it permitted Dejerinett to raise the testing claim on behalf of himself and on behalf of others. We hold in the alternative that even if Dejerinett somehow had constitutional standing to assert the testing claim, he did not, in light of

---

**33.** Because Griffin satisfied neither the commonality nor the typicality requirements of Rule 23(a), we need not address whether he could have been an adequate representative of the class. *See* Fed.R.Civ.P. 23(a)(4).

**34.** There is some indication in the record that the Florida Department of Administration, on the basis of testing, training, and experience, rated Dejerinett as well-qualified for the clerk position. We cannot tell from the record whether any testing done by the Department of Administration measured health, physical ability, or intelligence. In any event, because the rating took experience and training into account, there was a substantial subjective component to the rating. We also note that because Dejerinett received a well-qualified rating (which presumably was a reason he was granted an interview), he did not allege that the Department of Administration's rating process illegally discriminated against black applicants.

*General Tel. Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), have representative capacity to assert the testing claim on behalf of those who took the FDOC's written entry-level examination, failed it, and were not hired.[35] In other words, Dejerinett did not meet the prerequisites of Rule 23(a).

The district court, in effect, presumed the similarity of hiring claims of those denied clerical positions to hiring claims of those denied correctional officer positions. In our view, applicants who were subjectively denied clerical positions cannot sufficiently identify with other applicants who failed an objective written examination and, on that basis, were not hired for the higher-ranking position of correctional officer. *See Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1364 (11th Cir.1984) ("The [district] court [correctly] reasoned that because [the plaintiffs] were applicants for supervisory positions, they did not sufficiently identify with other applicants for lower level labor jobs or employees complaining of disparate job assignments or pay.") The district court abused its discretion when, in light of *Falcon,* it continued to permit Dejerinett to represent those members of the class who took and failed the written entry-level correctional officer examination.

### B.

Intervenor Alvin Smith twice applied for the entry-level correctional officer position held by Griffin. Smith was first denied the job because he did not have a high school diploma or a general equivalency diploma (GED), both requirements for the job. Later he obtained a GED, but he then failed the written correctional officer examination. Consequently, he was denied the position a second time.

Smith had constitutional standing to assert a testing claim under Title VII. He

could, and did, allege injury as a result of the FDOC's testing requirement: he took and failed the written examination required of entry-level correctional officers. Although Smith may very well have had representative capacity, under Rule 23(a), to assert testing claims on behalf of other black applicants who failed the same test and were consequently not hired, we need not address that point. Smith did not file a timely charge of racial discrimination with the EEOC, a precondition to a Title VII suit. *See* 42 U.S.C. § 2000e-5(e) (1982); *Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992, 1010–11 (11th Cir.1982); *see also supra* note 12. Furthermore, as we discuss below, Smith could not avail himself of the single-filing rule. For these reasons, we hold that the district court erred when it allowed Smith to intervene as a class representative.

In *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498–99 (5th Cir.1968), our predecessor circuit held that it is not necessary for each person with the same grievance to file an EEOC charge as a prerequisite to class membership. Nor is it necessary that an intervenor bring a charge with the EEOC as a prerequisite to serving as a class representative. *Id.* As long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members. *Id.* [36]

This rule, which has become known as the "single-filing rule," contains two essential requirements: "First, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective.... Second, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." *Jackson,* 678 F.2d at 1011–12. In the case before us, the first requirement was met:

---

**35.** *See supra* note 18.

**36.** The *Oatis* reasoning was extended to intervention in non-class suits in *Wheeler v. American Home Prods. Corp.,* 582 F.2d 891, 897–98 (5th Cir.1977) (similarly situated intervenors who had not filed EEOC charges nevertheless could assert back pay claims if one or more of

original plaintiffs had filed timely charges). The *Oatis* rationale was further extended in *Crawford v. United States Steel Corp.,* 660 F.2d 663, 665–66 (5th Cir. Unit B Nov. 1981), which held that every original plaintiff in a multi-plaintiff, non-class action suit need not file charges with the EEOC.

Griffin, one of the named plaintiffs, timely filed an adequate EEOC complaint, as far as it detailed his promotion and discipline claims. The second requirement, however, was not satisfied. Smith, a non-filing plaintiff, had an objective testing claim while Griffin, on the other hand, had subjective promotion and discipline claims.

We hold that Griffin and Smith were not sufficiently similarly situated. That is, employee Griffin's claims and applicant Smith's claims did not arise out of similar discriminatory treatment. Griffin alleged that the FDOC's subjective promotion and discipline practices were illegally discriminatory. Smith alleged that the FDOC's objective correctional officer examination illegally discriminated against black applicants. The FDOC's promotion and discipline practices were not manifested in similar fashion to its hiring and testing practices. *See Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1381 (11th Cir.1983) (non-filing incumbent plaintiff's discriminatory examination claim was not sufficiently similar to filing plaintiffs' discriminatory discharge and broad-based, ongoing campaign of discrimination claims to invoke single-filing rule to excuse filing requirement); *Dalton v. Employment Sec. Comm'n*, 671 F.2d 835, 838 (4th Cir.), *cert. denied*, 459 U.S. 862, 103 S.Ct. 138, 74 L.Ed.2d 117 (1982) (because non-charging plaintiff's hiring claim was not "substantially identical" to incumbent employee's claims of discriminatory treatment, single-filing rule did not apply). Although both employment practices could have been racially discriminatory, that alone is not enough to implicate the second requirement of the single-filing rule. Otherwise, "intervention [could] bootstrap the court's jurisdiction to encompass claims regarding practices broader than the ... claims properly assertable by the named plaintiffs." *Vuyanich v. Republic Nat'l Bank*, 723 F.2d

1195, 1201 (5th Cir.) (former employees who sought to intervene in class action but who did not file timely charges with EEOC could only proceed within periphery of issues that named plaintiffs could assert), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984); *see also Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1246 (7th Cir.1983) ("[A] class member who does not meet the procedural prerequisites for waging a Title VII suit may not use the guise of a motion to intervene to take over as the sole class representative for someone who initiates but is not legitimately able to continue a class action.").

We also note that merely because a notation at the beginning of Griffin's EEOC complaint stated that Griffin's charge also encompassed "[s]incerity of recruiting, hiring, and promoting of minority groups within the Florida's Division of Adult Corrections," Smith's status as a class representative was not saved. As the pleadings make clear, Griffin never had constitutional standing to raise a testing or a hiring claim, a fundamental requirement underlying the single-filing rule: "once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated." *Oatis*, 398 F.2d at 498.[37] Smith cannot point to Griffin's EEOC charge, which arguably contained a testing claim brought on behalf of others, to excuse his failure to have filed his own testing charge with the EEOC when Griffin did not have standing to raise the testing issue. We cannot permit the single-filing rule to be used to circumvent the constitutional requirement of standing.

## IV.

In sum, based on standing principles and on the dictates of *Falcon*, we hold that the district court erred when it certified the class with the named plaintiffs as repre-

---

**37.** By "standing," the *Oatis* court meant "the issues as to which [the employee] is aggrieved," *Oatis*, 398 F.2d at 499, citing Title VII's enforcement provision that requires the EEOC to investigate the charges of a person claiming to be aggrieved, 42 U.S.C. § 2000e-5(a). By "standing," the *Oatis* court also meant, even if implicit-

ly, personal injury, that is, constitutional standing. *See id.* at 498–99; *see also Vuyanich v. Republic Nat'l Bank*, 723 F.2d 1195, 1200–01 (5th Cir.) (interpreting *Oatis'* single-filing rule as implicating constitutional standing), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984).

sentatives. None of the named plaintiffs— Griffin, Dejerinett, or Smith—should have been allowed to represent the class of black correctional officer applicants with testing claims. The district court's order certifying the class is therefore

VACATED.

HATCHETT, Circuit Judge, dissenting:

I dissent. The majority holds that Smith did not meet the second element of the single-filing rule. That rule states, "the individual *claims* of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." *Jackson,* 678 F.2d at 1011–12 (emphasis added). One of Griffin's claims in his EEOC complaint was that the FDOC discriminated against black job applicants. Non-filing intervenor Smith's claim arose "out of similar discriminatory treatment," because he alleges that the FDOC discriminated against him and other applicants through administration of a test with a discriminatory impact on blacks. The majority ignores the fact that Griffin raised the claim of discrimination against black applicants in his EEOC complaint.

The majority erroneously assumes that if Griffin lacks standing to raise the hiring claim in federal court, then his raising of that claim before the EEOC is somehow ineffective for purposes of the single filing rule. The majority's reasoning is based upon its failure to differentiate between the policy underlying the standing requirement in federal court and the policy underlying the single filing rule in an EEOC action. The policy underlying the standing requirement is to ensure that a party litigating an issue has a concrete stake in the outcome of the case, and is therefore motivated to vigorously litigate the issues. The policy underlying the EEOC filing requirement is to ensure "that the settlement of grievances be first attempted through the office of the EEOC...." *Ezell v. Mobile Housing Board,* 709 F.2d 1376, 1381 (11th Cir.1983); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir.1968). The purpose underlying the EEOC filing requirement is therefore to promote the resolution of Title VII claims out of court. The EEOC proceeding is not designed as a way-station on the road to the federal courthouse.

By asserting a hiring grievance in his EEOC complaint, Griffin ensured "that the settlement of [hiring] grievances [would] be first attempted through the office of the EEOC." *Ezell,* 709 F.2d at 1381. The fact that Griffin may not have had standing in federal district court to raise the hiring issue is irrelevant to the fact that his EEOC complaint gave the EEOC an opportunity to settle the hiring grievance before that grievance was sued upon in federal district court. Since Smith's claim in federal district court of discriminatory hiring practices is identical to the claim of discriminatory hiring practices asserted in Griffin's complaint before the EEOC, invoking the single filing rule will not frustrate the purpose of the EEOC filing requirement: to give the EEOC a chance to resolve Title VII claims before they go to court. The fact that Griffin may not have had standing to raise the hiring claim in court is irrelevant to the issue of whether the EEOC has had a chance to resolve that claim before it is taken to court, whether by Griffin, Smith, or anyone else.

In short, the majority has grafted the constitutional standing requirement for parties litigating in federal district court onto the filing requirements for persons alleging Title VII claims before the EEOC. Such a requirement does not, and never has, existed. The majority, however, misinterprets Fifth Circuit dicta to reach just that conclusion. That dicta says, "Once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated." *Oatis,* 398 F.2d at 498. The majority fails to mention that the sole issue in the *Oatis* case was whether a Title VII class action could include in the class persons who had not previously filed charges with the EEOC. The court held that the class could include such persons. The *Oatis* court gave its reasoning for this holding in the sentence immediately preceding the language relied upon by the majority in

this case. That sentence states, "If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful." *Oatis*, 398 F.2d at 498. In short, the court in *Oatis* was not faced with the question of whether an EEOC complainant could effectively file claims with the EEOC even though the complainant would not have standing to assert the claim in federal district court. The majority's application of constitutional standing requirements to the EEOC complainant puts the EEOC in the nonsensical position of having to anticipate how the federal district court will rule on the complainant's standing to litigate various claims if the EEOC does not resolve them. Such a rule will result in the EEOC narrowing its resolution of claims to those which it anticipates the complainant will have standing to sue upon in federal district court, regardless of the apparent existence of the alleged discrimination with respect to other employees or job applicants. Such a situation would hardly further the purpose of the EEOC filing requirement: to resolve Title VII claims out of court.

Title 42 U.S.C. § 2000e–5(b) says:

Whenever a charge is filed by or on behalf of a person *claiming* to be aggrieved, or by a member of the Commission, alleging that an employer ... has engaged in an unlawful employment practice, the Commission *shall* serve a notice of the charge ... and *shall* make an investigation thereof.

This provision requires the Commission to investigate all charges which a person "claims" to be aggrieved of. In no way does the provision suggest that the Commission is limited to the investigation of claims which the complainant will have standing to bring in a federal court. Any suggestion in *Oatis* of such a requirement is dicta that is in conflict with the intent of the statute that the EEOC resolve "claimed" discrimination out of court. Smith should therefore be allowed to proceed in federal district court as a class representative for the class of applicants who failed the objective test.